UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES STEEL CORPORATION, | ) ) ) | Court. No. 25-00243 |
| *Plaintiff*, | ) ) ) | **NONCONFIDENTIAL** |
| v. | ) ) | **VERSION** |
| UNITED STATES, | ) ) ) | Business Proprietary Information Removed from Brackets on Pages |
| *Defendant*. | ) ) ) | 6, 10-11, 13. |

## COMPLAINT

Plaintiff United States Steel Corporation ("U. S. Steel" or "Plaintiff") files this complaint to contest the final determination by the United States Department of Commerce ("Commerce") in the first antidumping administrative review of Certain Oil Country Tubular Goods ("OCTG") from Mexico, published in the *Federal Register* on September 5, 2025 (90 Fed. Reg. 42,933).

By and through their attorneys, Plaintiff alleges and states as follows:

## JURISDICTION

1. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I), 516A(a)(2)(B)(iii), 516A(g)(3)(A)(i), and 516A(g)(3)(B) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (a)(2)(B)(iii), (g)(3)(A)(i), and (g)(3)(B). Consequently, this Court has jurisdiction over this matter by reason of 28 U.S.C. § 1581(c), which confers upon the Court exclusive jurisdiction over civil actions commenced under Section 516A of the Act.

## STANDING

2.⠀⠀⠀⠀Plaintiff is a U.S. producer of a domestic like product to OCTG from Mexico, the subject merchandise at issue in this appeal. Plaintiff also actively participated in the antidumping administrative review that is the subject of this appeal insofar as Plaintiff requested the administrative review and submitted facts and argument to Commerce during the administrative review. Accordingly, Plaintiff is an "interested party" within the meaning of Section 771(9)(C) of the Act, as amended, 19 U.S.C. § 1677(9)(C), and has standing to commence this action as a "party to the proceeding" pursuant to Section 516A(d) of the Act, 19 U.S.C. § 1516a(d), and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

3.⠀⠀⠀⠀Commerce published notice of the final results of the administrative review in the Federal Register on September 5, 2025. *See Certain Oil Country Tubular Goods From Mexico: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 42,933 (Sept. 5, 2025), and accompanying Issues and Decision Memorandum ("IDM") (together collectively, the "*Final Results*").

4.⠀⠀⠀⠀On September 25, 2025, Plaintiff filed a Notice of Intent to Commence Judicial Review with the United States Secretariat under the United States-Mexico-Canada Agreement within the time specified by 19 U.S.C. § 1516a(g)(3)(B).

5.⠀⠀⠀⠀Plaintiffs initiated this action by filing a Summons on November 4, 2025, within the 30-day period that began to run 31 days after the date of publication of the *Final Results* being challenged. Accordingly, this action was timely commenced within the period specified by 19 U.S.C. § 1516a(a)(2)(A)(i)(I), as modified by 19 U.S.C. § 1516a(a)(5)(A) for cases involving merchandise from free trade area countries. *See also* Rule 3(a)(2) of the Rules of the United States Court of International Trade ("CIT Rules"); 28 U.S.C. § 2636(c).

6. Plaintiff is filing this Complaint within thirty days after filing of the Summons in this action as prescribed by 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of the CIT Rules. Accordingly, this Complaint is timely filed.

## STATEMENT OF FACTS

**Initiation of Administrative Review and Overview of Administrative Proceedings**

7. On November 30, 2023, Plaintiff alleged that imports of OCTG from Mexico were being sold by Tubos de Acero de Mexico S.A. ("TAMSA"), Siderca S.A.I.C. ("Siderca"), and Tenaris Global Services S.A. ("TGS USA") at less than fair value, and requested that Commerce conduct an antidumping administrative review of these parties for the May 11, 2022, through October 31, 2023, period of review ("POR"). On February 27, 2024, Plaintiff withdrew its request for a review of Siderca.

8. On December 29, 2023, Commerce initiated an antidumping administrative review concerning OCTG from Mexico. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 90,168, 90,170 (Dec. 29, 2023). On March 12, 2024, Commerce selected TAMSA and TGS USA as mandatory respondents in the administrative review and thereafter issued an initial antidumping questionnaire to both parties.

9. On March 15, 2024, TAMSA and TGS USA (hereinafter, "Tenaris Mexico") filed a letter with Commerce noting their affiliation and requesting to file a joint response to Commerce's questionnaire. Commerce granted this request on March 28, 2024.

10. Between April 2, 2024, and May 2, 2024, Tenaris Mexico responded to Commerce's initial questionnaire, providing certain information concerning its sales of OCTG in the United States and Mexico and its production and further manufacturing costs. However, Tenaris Mexico failed to provide certain key information requested by Commerce. Accordingly, on April 16, 2024, May 9, 2024, May 16, 2024, May 24, 2024, and June 14, 2024, Plaintiff

submitted comments and rebuttal factual information identifying deficiencies and errors in Tenaris Mexico's initial questionnaire response, including issues affecting Tenaris Mexico's product characteristic reporting for threading. Commerce issued a supplemental questionnaire to Tenaris Mexico on August 6, 2024, requesting that Tenaris Mexico provide missing product characteristic information.

11. On September 17, 2024, Tenaris Mexico filed its response to Commerce's supplemental questionnaire. Because Tenaris Mexico continued to omit key information requested by Commerce, Plaintiff submitted additional information and comments on October 4 and 17, 2024, requesting that Commerce address the persistent deficiencies affecting, *inter alia*, Tenaris Mexico's product characteristic reporting for threading.

12. Commerce published its *Preliminary Results* on December 5, 2024. *Certain Oil Country Tubular Goods From Mexico: Preliminary Results and Recission, In Part, of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 96,638 (Dec. 5, 2024) and accompanying Preliminary Decision Memorandum ("PDM") (together collectively, the "*Preliminary Results*"). Thereafter, on February 5, 2025, Commerce issued a second supplemental questionnaire to Tenaris Mexico, yet again soliciting product characteristic information that Tenaris Mexico had failed to provide in its prior submissions.

13. Tenaris Mexico responded to Commerce's second supplemental questionnaire on February 19, 2025, but failed to provide the information requested. Briefing and an administrative hearing followed. Commerce published its *Final Results* on September 5, 2025.

**Substantive Background: OCTG Product Characteristic Reporting**

14. Consistent with Commerce's usual practice, to report sales of OCTG in the Mexican and U.S. markets, Commerce's initial questionnaire instructed Tenaris Mexico to assign

a "Control Number" or "CONNUM" to each sales observation. A single CONNUM is a concatenation of several different fields. Each field corresponds to a distinct category of physical characteristics.

15. For OCTG, there are ten separate fields within the CONNUM. In hierarchical order these are: (1) Seamless or Welded; (2) Type; (3) Grade; (4) Coupling; (5) Upset End; (6) Threading; (7) Nominal Outside Diameter; (8) Length; (9) Heat Treatment; and (10) Nominal Wall Thickness. Within each of these ten CONNUM fields, a respondent will select from among a list of numerical codes. Each numerical code represents a commercially significant physical distinction within that field's overarching category.

16. For example, and most relevant here, respondents are instructed to report one numerical code within the Threading field that establishes whether or not the ends of the OCTG pipe are threaded and, if so, the type of threading applied. Commerce has established five default numerical codes for the Threading field: "10" = Not threaded; "40" = Short thread; "45" = Long thread; "50" = Buttress thread; and "55" = Extreme Line/Integral Joint thread. The first numerical code (10) represents unthreaded OCTG. The remaining four numerical codes (40, 45, 50, 55) each represent a different type of American Petroleum Institute ("API") standard threading. In practical terms, one can easily see the physical difference between each of these default thread types, *e.g.*, a "short" versus a "buttress" thread.

17. It is theoretically possible to introduce additional numerical codes within the Threading field, but any nonstandard numerical code must be supported by factual information on the administrative record. Therefore, Commerce's initial questionnaire instructs that respondents should "describe in detail what distinguishes {any additional} type of thread from each of the other additional types and from each of the {five default} types listed above, and

provide supporting documentation to evidence such differences" "{f}or each additional type of thread."

18.  Commerce utilizes CONNUMs in its dumping calculation, *inter alia*, to determine which product sold in the home market is most similar to a given product sold in the U.S. market. This exercise is fundamental to Commerce's dumping calculation, as Commerce will ultimately compare the normal value and U.S. price of physically similar products.

19.  Thus, a respondent can distort Commerce's dumping calculation by reporting CONNUM information that does not accurately represent products' physical characteristics. For example, if two products with a different physical characteristic are assigned the same code, Commerce may compare their normal value and U.S. price to ascertain dumping. Conversely, if two products sharing a given physical characteristic are assigned different codes, Commerce may fail to compare their normal value and U.S. price to ascertain the extent of dumping. Both types of error are implicated here and distorted Commerce's *Final Results*.

**Commerce Failed to Understand or Address Tenaris Mexico's Distortive Threading Reporting**

20.  With respect to threading, Tenaris Mexico coded some of its home market and U.S. OCTG sales using default Threading codes. Tenaris Mexico also created two additional, nonstandard Threading codes: one basket category for all threading [         ] Tenaris, and a second basket category for all threading [       ] third parties.  Tenaris Mexico assigned such nonstandard codes to certain home market and U.S. OCTG sales. However, contrary to the instructions in Commerce's initial questionnaire, Tenaris Mexico did not describe what physically distinguished the thread types falling within each basket category from each of the five default Threading codes. Also contrary to Commerce's initial questionnaire instructions, Tenaris Mexico did not describe what physically distinguished the thread types coded within the

first nonstandard basket category from the thread types coded within the second nonstandard basket category. Finally, Tenaris Mexico did not establish that the thread types within each basket category were physically similar to the other thread types coded within that basket category. Indeed, Tenaris Mexico did not even identify what thread types were coded within each of the nonstandard basket categories.

21. On May 24, 2024, Plaintiff submitted comments describing the deficiencies in Tenaris Mexico's reporting and requesting, *inter alia*, that Commerce solicit the missing Threading information.

22. On August 6, 2024, Commerce issued a supplemental questionnaire to Tenaris Mexico requesting that, as originally instructed, "for each additional type of thread, describe in detail what distinguishes that type of thread from each of the other additional types and from each of the existing threading types, and provide supporting documentation to document such differences," in addition to several related inquiries.

23. Over a month later, after having received four separate extensions of time, Tenaris Mexico submitted a response to this portion of Commerce's supplemental questionnaire. Again, Tenaris Mexico failed to provide even a single document establishing that the products coded under Tenaris Mexico's additional, nonstandard Threading codes were both physically different from products assigned all other numerical codes, and physically similar to products assigned the same numerical code. Tenaris Mexico's narrative explanation was limited to a statement indicating that Tenaris Mexico proposed to code together "all proprietary connections from third (*i.e.*, unaffiliated) parties." The only descriptive explanation Tenaris Mexico provided justifying this grouping was that "{i}n terms of their physical characteristics (*i.e.*, threading), these connections are not threaded within TAMSA or Tenaris-related facilities and are sent to thread at

a third party and when finished invoiced to the customer." But this quirk of Tenaris Mexico's production flow is not a characteristic that is physically discernible in the final product.

24.     In comments submitted in advance of Commerce's *Preliminary Results*, Plaintiff observed that, even after two specific requests from Commerce, Tenaris Mexico had failed to place factual information necessary to substantiate its use of nonstandard Threading codes on the administrative record. Plaintiff asked that Commerce neutralize the distortion caused by Tenaris Mexico's unsupported Threading reporting by applying facts otherwise available with an adverse inference ("AFA") to products assigned a nonstandard Threading code. *See* 19 U.S.C. § 1677e(b)(1)(A). Plaintiff also requested that Commerce obtain supplemental information from Tenaris Mexico concerning the breakout of thread types lumped together under each nonstandard Threading code.

25.     Commerce's *Preliminary Results* did not address these issues.

26.     Instead, on February 5, 2025, Commerce issued a second supplemental questionnaire, yet again requesting that Tenaris Mexico, "describe in detail what distinguishes {any additional} type of thread from each of the other types of…threading" as Tenaris Mexico had not "fully described the {proposed} thread types" in its first two responses. Commerce also requested that Tenaris Mexico explain "in detail" why its proposed thread type groupings were appropriate.

27.     On February 19, 2025, Tenaris Mexico responded to Commerce's second supplemental questionnaire, asserting that that its nonstandard, basket category Threading codes were "{c}onsistent with its approach in the investigation, which was verified and approved by Commerce." Yet, Tenaris Mexico did not provide the information repeatedly requested by Commerce in this review. It otherwise reasserted that the nonstandard basket category codes are

8

necessary "due to the different physical characteristics in the products," but failed to describe what those different physical characteristics are or provide any documentation for certain affected thread types.

28. In its administrative case brief, Plaintiff argued that Tenaris Mexico had been provided repeated opportunities to provide explanation and documentation in response to the exact same question; yet, Tenaris Mexico failed to provide even the bare minimum to substantiate its addition of nonstandard basket category Threading codes or its treatment of the thread types assigned to the basket categories as both physically similar to other thread types assigned the same code and physically distinct from thread types assigned a different code. Plaintiff argued that Tenaris Mexico's nonstandard reporting was unreasonable and distorted Commerce's model matching program. Plaintiff again requested that Commerce apply AFA, pursuant to 19 U.S.C. § 1677e(b)(1)(A), to fill the gap in the administrative record left by Tenaris Mexico's continued failure to substantiate its Threading reporting with record evidence. In particular, Plaintiff argued the following:

  a) Commerce's questionnaire instructions and settled practice require respondents to justify the addition of new CONNUM codes based on physical distinctions, which is why Commerce added specific instructions to ensure that any proposed additions to the default Threading codes would be supported by evidence establishing that thread types categorized thereunder were physically similar to each other and physically different from thread types assigned all other Threading codes.

  b) After disclosing the addition of new Threading codes in response to Commerce's initial questionnaire, Tenaris Mexico persistently failed to provide evidence that the new codes had been used to categorize thread types based on commercially

9

significant physical differences (from thread types categorized under other Threading codes) and similarities (with thread types categorized under the same Threading code).

        c)      Tenaris Mexico failed to provide adequate documentation or explanation of the physical characteristics of third-party proprietary threads. Indeed, Tenaris Mexico failed to provide <u>any</u> documentation for some thread types. What documentation Tenaris Mexico did submit merely reinforces the conclusion that its approach of lumping thread types together in nonstandard basket categories yields distortive comparisons unrelated to the products' physical characteristics. For example, it demonstrates that certain thread types assigned to the new codes are [                                                                                 ] and that certain thread types categorized under the first new code are [                                                                                 ]. It also demonstrates that the thread types categorized under each of the new codes are [                                                                                 ].

        d)      Although Tenaris Mexico claimed that it followed the same approach in this review as it did in the original investigation, the administrative record of each segment is distinct and this review raised new issues not considered during the investigation, especially with respect to the relative physical similarity of thread types classified under each new Threading code. The problems of Tenaris Mexico's unexplained reliance on non-specific basket categories for which it failed to provide supporting documentation are entirely of its own making. Tenaris Mexico was provided multiple opportunities to fill gaps in the record to support its reporting yet failed to do so.

29.      Commerce's *Final Results* continued to accept Tenaris Mexico's nonstandard basket category Threading codes. Commerce did not, however, discuss any of the evidence (or

absence thereof) on the record of this administrative review, instead relying solely on the conclusory statement that "The record in this review demonstrates there are differences in physical characteristics between the two different categories of proprietary thread types and standard thread types, making them unique and not interchangeable with each other." Commerce offered no explanation for reaching this conclusion with respect to certain "proprietary" thread types that were [

].

30.	Moreover, Commerce's conclusion overlooks half of Plaintiff's argument, which was not limited to whether each category was physically distinct from the rest, but also concerned whether the thread types being lumped together under each nonstandard basket category were physically distinct from one another, such that coding them as physically identical would not be distortive. Commerce never addressed this issue.

31.	Similarly, Commerce found that "no necessary information {is} missing from the record that would warrant application of facts available under section 776(a) of the Act," but espoused this conclusion without having discussed any of Tenaris Mexico's questionnaire responses or explained how the information provided constituted a complete response to the questions posed. Again, Commerce failed to meaningfully engage with the substance of Plaintiff's argument.

32.	Commerce's *Final Results* calculated a weighted average *ad valorem* dumping margin of 26.10 percent for Tenaris Mexico. 90 Fed. Reg. at 42,934.  Had Commerce refused to accept Tenaris Mexico's unsupported reporting for the Threading field, Commerce would have calculated a higher dumping margin.

## STATEMENT OF CLAIMS

### Count 1

33.     Paragraphs 1 through 32 are incorporated herein by reference.

34.     Plaintiff challenges Commerce's *Final Results* in the first antidumping administrative review on OCTG from Mexico insofar as Commerce accepted Tenaris Mexico's nonstandard basket category Threading codes as submitted and determined not to rely upon facts otherwise available or apply an adverse inference. Commerce's determination was arbitrary, unsupported by substantial evidence on the record, and otherwise contrary to law.

35.     Plaintiffs submitted documentation and argument establishing that Tenaris Mexico's grouping of physically dissimilar thread types under nonstandard basket category Threading codes was unreasonable and distortive. For its part, Tenaris Mexico failed to establish that the structure it designed for nonstandard basket category Threading codes was non-distortive because it thrice refused to provide information and documentation requested by Commerce. Commerce failed to explain its determination that these reporting deficiencies did not constitute a gap in the administrative record; the conclusory determination espoused in Commerce's *Final Results* is thus unsupported by substantial evidence and contrary to law. Moreover, insofar as Commerce's determination not to apply an adverse inference was premised on Commerce's erroneous failure to discern the gap in the administrative record, Commerce's determination not to apply an adverse inference was likewise unsupported by substantial evidence and contrary to law.

36.     Even if there were no gap in the administrative record with respect to Tenaris Mexico's Threading reporting, Commerce's *Final Results* summarily accepted Tenaris Mexico's addition of nonstandard basket category Threading codes without meaningfully addressing

Plaintiff's factual arguments or explaining the rationale underlying Commerce's conclusion. The absence of reasoned decision-making renders Commerce's decision arbitrary and unlawful.

37.  Relatedly, 19 U.S.C. § 1516a(b)(1)(B)(i) requires Commerce to support its determinations with substantial record evidence. This standard requires Commerce to address the relevant arguments of the parties. *See* 19 U.S.C. § 1677f(i)(3); *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020) ("Commerce is obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination."). As explained, Commerce's *Final Results* relied solely on conclusory assertions in accepting Tenaris Mexico's distortive Threading reporting. Commerce failed to address the substance of Plaintiff's arguments and supporting evidence. Commerce's *Final Results* are thus unsupported by substantial evidence.

38.  In addition, Commerce's acceptance of Tenaris Mexico's nonstandard basket category Threading codes has rendered the coding within this CONNUM Field internally inconsistent. Some thread types having [                    ] are assigned separate numerical codes, while Tenaris Mexico is permitted to assign its nonstandard numerical codes to [               ] thread types. This unexplained inconsistency in Commerce's treatment of materially identical situations also renders Commerce's decision arbitrary and unsupported by substantial evidence.

## REQUEST FOR JUDGMENT AND RELIEF

39.  WHEREFORE, Plaintiffs respectfully request that this Court:

40.  Hold that the portions Commerce's *Final Results* addressed under Count I are arbitrary, unsupported by substantial evidence, and otherwise not in accordance with law;

41.  Remand this matter to Commerce for disposition consistent with the opinion and order of the Court; and

**NONCONFIDENTIAL VERSION**

42.     Grant such further relief as this Court deems just and proper.

\*     \*     \*

Dated: December 4, 2025                   Respectfully submitted,

<u>/s/ James E. Ransdell</u>
James E. Ransdell
Thomas M. Beline
Myles S. Getlan
Margaret E. Monday
**CASSIDY LEVY KENT (USA) LLP**
2112 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20037
Phone: (202) 567-2321
Fax: (202) 567-2301
Email: jransdell@cassidylevy.com
*Counsel for United States Steel Corporation*

## NOTICE TO INTERESTED PARTIES

*United States Steel Corporation v. United States*
**CIT Court No. 25-00243**

      I, James E. Ransdell of the law firm Cassidy Levy Kent (USA) LLP, hereby certify that on December 4, 2025, pursuant to CIT Rule 3(f), I notified all interested parties who were a party to the proceeding below, by mailing copies of the confidential and public versions of the foregoing Complaint by certified mail, return receipt requested:

**On behalf of: Borusan Pipe U.S., Inc., PTC Liberty, and Welded Tube USA**
Roger B. Schagrin, Esq.
Schagrin Associates
900 7th Street, NW
Suite 500
Washington, DC 20001
Phone: 202-223-1700
Email: rschagrin@schagrinassociates.com

**On behalf of: Tubos de Acero de Mexico, S.A., and Tenaris Global Services (U.S.A.) Corporation**
Gregory J. Spak
White and Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
Phone: 202-626-3600
Email: gspak@whitecase.com


                                                    /s/ James E. Ransdell
                                                      James E. Ransdell

## **CERTIFICATE OF SERVICE**

*United States Steel Corporation v. United States*
**CIT Court No. 25-00243**

      I, James E. Ransdell of the law firm Cassidy Levy Kent (USA) LLP, hereby certify that on December 4, 2025, copies of the confidential and public versions of the foregoing Complaint were mailed to the following parties by certified mail, return receipt requested:

**UPON THE UNITED STATES:**
Margaret J. Jantzen
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044


**UPON THE DEPARTMENT OF COMMERCE:**
Kelly R. Welsh
General Counsel
U.S. Department of Commerce
Mail Stop 5875 HCHB
14th and Constitution Avenue, NW
Washington, DC 20230

John D. McInerney
Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

                                                    /s/ James E. Ransdell
                                                        James E. Ransdell